Defendant Michael O'Donnell, a mortgage broker, was indicted for bank fraud under 18 United States v. O'Donnell, and the sole disputed issue at his jury wave trial was whether, in connection with a $44,000 loan, O'Donnell had defrauded Countrywide Bank, a federally insured financial institution, or Countrywide Home Loans, a mortgage company, outside the ambit of the federal bank fraud statute. And the sole issue on this appeal is whether sufficient evidence was introduced at trial to support his conviction for attempted bank fraud. Now, it was stipulated that the loan, in this case, was fraudulent, but it was undisputed that O'Donnell dealt only with Countrywide Home Loan, the mortgage company, not the bank. It was not stated that anyone at the bank had reviewed this loan, had approved it, or had any other role in the process prior to closing. What is the significance of the federal documents that contain the bank's name in them? Well, Your Honor, that really is the only evidence that relates to the bank prior to closing, and I would submit that while it is relevant, what this evidence is, is basically at the end of an approval letter. This is an approval letter, faxed to O'Donnell by the mortgage company, signed by Reed Morrison, the mortgage company's underwriter, and containing the mortgage company's loan conditions. At the end of that letter, two sentences appear, Thank you for submitting your loan to Countrywide Bank. We sincerely appreciate your business. That sort of two-line thing is at the very end of that letter. And I submit that that is, I mean, that really is the issue before you, Your Honor, which is, is that sentence basically enough to satisfy the elements of attempted bank fraud? That is, is it enough to establish that O'Donnell specifically intended, because this is a specific intent crime, that he specifically intended to defraud the bank, or that he specifically intended to obtain the monies of the bank, and that he committed a substantial step towards the completion of that crime, that is, defrauding the bank? So I say that those two sentences, particularly in context, that is, the context being a mortgage company document faxed to him by and signed by the mortgage company underwriter, containing the mortgage company's loan conditions. The mere inclusion of that sort of standard language and the reference to the bank in there, it does not, it cannot be enough to establish his intent to defraud a bank or to obtain the bank's monies. And I think it's important to keep in mind that this is an inchoate crime. And as the U.S. Supreme Court said in Braxton, where you're talking about attempt, even if the crime is a general intent crime, when you're talking about the inchoate crime of attempt, there needs to be a specific intent. So it's not enough that O'Donnell intended to defraud somebody and it turned out to be a bank. It's not enough that he intended to get monies from some entity. It has to be, he has to specifically intend to defraud the bank. After he gets that letter telling him that the loan is going to be from the bank, I don't think that's what the letter says. How would you characterize that? I would characterize it as a sort of a form of thank you from the bank. Thank you for submitting your loan to the bank. It doesn't mean he did submit the loan to the bank because he didn't. He submitted his loan to the mortgage company. The letter was signed by the mortgage company's underwriter. It wasn't signed by anybody from the bank. Why is the letter, on your account, why is the letter being issued? Well, it's a… Is it a mistake? In other words, it's not true? No, no. It's a letter which tells him the conditions that he needs to satisfy before the loan can be approved. But I guess on your account, why is the letter referencing the bank at all? No idea. It's really, it doesn't, it really, it's totally incongruous with all of the other paperwork in the case. You mean in fact the bank would not be involved in the loan at all? Well, I think you can argue that that, and this is what Judge Whitlock found, you can argue, I think, that that letter put him on notice that the bank had some involvement in this loan. But, I mean, this is not something he said to them. He did not reply to them. It does not change his intent. He was only dealing with the mortgage company. I'm sorry. Sorry, Your Honor. Ladies first. Thank you. Was the line referencing the bank pre-printed on the letter, or was that part of the text? Well, it's a word process letter, Your Honor. If you look at Exhibit 1.12 in the appendix, which is the document that the government says is the main document that Judge Whitlock relied on, it's at the very top of the second page. The first page is all the conditions, all of the country-wide home loan, that is all the mortgage company conditions that have to be satisfied. And at the very top of the second page it says, Thank you for submitting your loan to Countrywide Bank. We sincerely appreciate your business. So the print is no different. It's a word process document, but it's a form. It's a form thank you. It doesn't change his state of mind. At that point had the crime been completed, or was it still in the process? Well, at that point the loan was still in process. So the attempt was still in the process? If there was an attempt, he was still doing what he was doing, and ultimately he did complete a crime. He did complete a crime. He defrauded a mortgage company, but he didn't defraud Countrywide Bank. Countrywide Bank was not the intended victim. They were not the actual victim. Judge Woodblock found that they had no skin in the game. This is simply too thin a wreath, half sentence, to find specific intent to defraud this bank. And that's really the government's argument. That's what they're relying on. Post the letter, he takes what the district court thought was a substantial step in furtherance of the crime, correct? Well, he continues to take steps to get the loan approved. So he's only dealing with a mortgage company. I understand. I understand, but post the letter, the argument of the confusion, the district court at least, was since you're still trying to facilitate a fraudulent loan, and now you've been told that the bank is going to be involved in that loan, that would provide the basis for saying that that post-letter conduct must have been or could have been intended to defraud the bank. Well, Judge Woodblock didn't explain that clearly. Judge Woodblock said, in effect, that that letter put O'Donnell on notice that the bank was involved in some way. And according to Judge Woodblock, that was enough to satisfy the elements of attempted bank fraud. What were the documents that led to his acquiring the money? The money? Well, the money was ultimately, the loan was funded by the mortgage company. He has an application? Does that mention the bank anywhere? I'm sorry, Your Honor? The application for the loan? Yes. Does that have the bank named anywhere? No, Your Honor. The application was submitted to the mortgage company. The closing documents all are the name of the bank, but as the government concedes, there's no evidence that O'Donnell ever saw any of those closing documents or participated in the closing himself in any way. Thank you. Good morning, Your Honors. Good morning, Mr. Blutard. Pardon me. My name is Mark Balthasard, and I represent the government in this appeal. With respect to this document, this was not a form document. There is no evidence that it contained boilerplate. The evidence at trial, according to the underwriter on this loan, was that this document was a conditional approval letter that was sent to the defendant, Mr. O'Donnell, who was the mortgage loan originator in this case, but who was seeking to obtain nearly all of the proceeds from this particular loan for himself. That this was noticed to him of conditions that had to be met before the loan would actually be finally approved. The letter contains specific conditions, multiple conditions, that were directed specifically to this loan application and the lender and her credit history and other documents that needed to be submitted. Mr. O'Donnell admitted and stipulated at trial that he received this letter, and he responded to it. How did he respond to it? He responded by fax, which he did send back to Countrywide Home Loan Mortgage, the mortgage company. But what he responded with was specific documentation, fraudulent documentation, concerning the lender's credit history and other matters. He forged her signature on several documents, which contained information purportedly about her credit history. He provided a letter, and admittedly that he stipulated to, a letter that was a fraudulent letter from an accountant that made representations concerning his knowledge about the loan applicant's tax returns and her income. All of those things stipulated that they were fraudulent, and he submitted all of these in response to this letter. This letter was important because it was necessary for the loan to be processed and to be approved. It was important, as I said, for Mr. O'Donnell because he had, in the first part of this transaction, the first mortgage, he had fronted $37,000 in order to allow that loan to close. This was how he was getting his money back, and he would be out this money. So this was important, and a very important document, essential to getting this loan approved and finally funded so he could get his money back. The statement that it had been submitted to Countrywide Home Loans comes at the top of the second page, as the Court will see when the Court reviews the document 1.12. It was reasonable for Judge Woodlock to conclude that, given the importance of this document, that Mr. O'Donnell read the entire first page, and there was no way that Mr. O'Donnell could know that there were not additional conditions on the second page unless he turned to the second page. And the first thing that he read when he turned to the second page was, thank you for submitting your loan to Countrywide Bank, FSB. We appreciate your business. It was, as Judge Woodlock stated below, quote, anybody looking at this would say the bank is involved here. That was an entirely reasonable conclusion. What's that mean, the bank is involved? Well, the Court did not go further than that, but the Court actually did say that. Is the government's position that the bank being involved, if that's all we had, the bank is involved, I don't quite know what that means. Is that enough to say that there was a specific intent to defraud the bank? Yes. I would suggest, I believe that Judge Woodlock went somewhat further and said, in fact, this reflected that the bank was, that the bank had submitted the letter to Mr. O'Donnell saying that the loan had been submitted to it. But setting that aside. Can I just, just before you answer, there's Countrywide Home Loans and then there's Countrywide Bank. Does Countrywide Home Loans make loans independent of the bank? The evidence was that both Countrywide Home Loans and Countrywide Bank were entities that were subsidiaries of Countrywide Financial Corporation. So they were affiliated entities. And there was evidence that Countrywide Home Loans employees, including the underwriter in this particular case, that he underwrote loans that were funded both by Countrywide Bank and Countrywide Home Loans. He did not pay attention to and wasn't aware in any particular instance. I'm guessing it's slightly different. Is it possible to get a loan from Countrywide Home Loans or is the only way to get a loan through Countrywide Bank? At the time, one could have gotten a loan through Countrywide Home Loans or through Countrywide Bank. So the thing that just I guess is starting to bother me slightly is if that's the case and the district court said Countrywide Bank is involved, I don't quite know what that means. Judge Whitlock, I believe, said that the letter indicated that That doesn't necessarily mean the loan is going to be provided by the bank. Does it? It doesn't necessarily. If it doesn't necessarily mean that, is that a problem for the government's case? No. In what sense would the bank be defrauded if it just had, if it wasn't, just by hypothesis, if it wasn't supplying, providing the loan and what it was doing was to some extent involved with Countrywide Home Loans, which was providing the loan? How would you be defrauding the bank? The bank, none of its funds would be at risk if it's not actually providing the loan. So in what sense would we say it was being defrauded? In that case, the government would not be able, as it didn't, as Judge Whitlock found here, the government was not able to establish that the funds, that the loan was actually ultimately funded by Countrywide Bank. But he found that Countrywide Bank was involved. And more importantly, are you saying the funds did not come from the bank? That's correct. Ultimately the funds did not come from the bank. So we still don't know why on that letter there's even a reference to the bank. Well, I think it is explained by the fact that, as the government describes in the brief and as the evidence established, although Countrywide Bank did not actually fund it, the court found that we did not establish that they had funded it, Countrywide Bank was actually identified as the lender on all of the closing documents. It was identified on the note as the lender. That's afterwards. So at the point where O'Donnell is committing the offense, what does he know? He knows that there's a line on that letter that says, thanks for submitting it to the bank. And he says, I didn't submit it to the bank. He doesn't say that, actually. He receives this letter from Countrywide Home Loans, which is an affiliate of Countrywide Bank, and he, in response to that letter, which says, in effect, your loan has been submitted to Countrywide Bank, he responds with false and fraudulent additional documents in order to obtain that loan. His knowledge at that point, and clearly what Judge Woodlock concluded from that evidence, was at that point he understood Countrywide Bank was involved in that loan. But that's the thing I'm still stuck on. Why is that legally enough? Because in this case, the government's position is that the evidence at that point is, what is his knowledge about who he is seeking to get this money from And I think what you're saying is, we don't know whether he's trying to get it from the bank. That's why you already said that. What I'm saying is, I think that the defendant has sort of conflated the knowledge and the intent to defraud and is trying to argue that that line is insufficient to establish an intent to defraud generally. The government's position is that, based on the stipulation and all of the evidence, Mr. O'Donnell's intent to defraud and his intent to obtain money and property by means of false and fraudulent pretenses is established, again, by his stipulation and all of the other evidence. The question is, where is that intent directed? And he stipulated, excuse me, that he had engaged in a multiyear scheme to defraud, engaged in mortgage fraud. And in this particular case, although he initially submitted the loan application to Countrywide Home Loans, he was put on notice and was told Countrywide Bank is involved and thus Let me ask it this way. Suppose Countrywide Bank's involvement consisted of providing technical assistance to Countrywide Home Loans in processing a loan Countrywide Home Loans would make. Just suppose that. Can we just, you got it? I got it. Okay, supposing that's true. Would it be enough, if that's all we knew about the involvement of Countrywide Bank, to say that he had a specific intent to defraud Countrywide Bank? I think probably not. In this case, it's beyond that. In this case, the letter says that the loan has been submitted to Countrywide Bank. But in fact, he did submit it to Countrywide Bank. I mean, he submitted it to a mortgage company. Correct. And he's just been told by the mortgage company that the loan has been submitted to its affiliate, Countrywide Bank. But it doesn't say it's been submitted so that the loan will be given by Countrywide Bank. I think that's the reasonable conclusion to be drawn from that. Is that what Judge Woodlock held? He did not specifically find that. But what do you do with that fact, the fact that we're reviewing Judge Woodlock's conclusion? I honestly don't know. It's not the typical thing where you've got a jury, and we just don't know what the jury was basing it on. We've got a judge's ruling in which he seems to think a finding of involvement is enough to show the intent to defraud. Are we supposed to look past that and just decide whether Judge Woodlock could have based it on a different conclusion? I think we have to look at what Judge Woodlock said and whether the evidence that's presented is sufficient to satisfy the elements based on what Judge Woodlock said. And I think he specifically says he had knowledge, he knew the bank was involved. It's clearly reasonable to conclude that when one submits a loan application to a bank, that a bank is going to be providing funds for that loan. And since he already had an intent to defraud, that his intent to defraud thereby, once he was on notice that the bank was involved, extended to the bank itself. Thank you. If there are no further questions, I'll rest on the brief. Thank you. Mr. Sullivan. Your Honor, on the issue of intent, I think this Court really needs to start with the Supreme Court's 2014 decision in Laughran, which makes quite clear this is a specific intent crime. The mere fortuitous involvement of a bank is not enough for bank fraud. The fact that a bank may be, quote, involved in some vague way is not enough. This is not an integrated transaction like the transaction that this Court addressed in the Edelkind case. The fact that the mortgage company and the bank may be affiliated in some way is not enough. The federal bank fraud statute, according to Laughran, does not sweep that broadly. There has to be a specific intent to defraud the bank or a specific intent to obtain the bank's monies, not somebody else's monies. With respect to the letter, obviously I'm not contending the letter was unimportant. It was important, but it was a letter that O'Donnell received from the mortgage company containing mortgage company loan conditions, stated as such, signed by the underwriter for the mortgage company, and he responded to the mortgage company. The perfunctory reference to the bank in that letter, which is frankly anomalous with all of the other documentation that he was dealing with, all of which was with the mortgage company, is simply not proof that he specifically intended to defraud the bank and it somehow magically transformed his state of mind. That's all they've got. And for this court to say that's enough in a specific intent, not only a specific intent crime, but it's an in color crime. There was a complete crime committed here. He did commit fraud. He defrauded a mortgage company, but to say, well, we don't really have bank fraud, so we're going to call it attempted bank fraud because it wasn't a bank, but the bank was kind of involved in some way, that's a kind of mushy compromise that really doesn't satisfy the requirements of the Constitution. The bank was not the victim. The bank was not the intended victim. The bank's monies were not at risk, and this was not an attempted bank fraud. Thank you. Thank you.